WARNER'S CAFETERIA, Plaintiff, *v.* JOHN F. TROMMER, INC., Defendant.

Municipal Court of New York, Borough of Manhattan, Third District, November 22, 1933.

*Siegel & Siegel* [*Morris Siegel* of counsel], for the plaintiff.

*Phillips, Mahoney, Leibell & Fielding* [*John E. McAniff* of counsel], for the defendant.

GENUNG, J. In November, 1932, the parties entered into a contract by the terms of which defendant agreed to pay the plaintiff $1,000 in consideration of the plaintiff's agreement to purchase the defendant's " near beer," and to display defendant's name " in and about " plaintiff's cafeteria at 3791 Broadway. The contract was executed about March 15, 1933. At that time the plaintiff had performed all the terms on its part to be performed by purchasing the defendant's " near beer " during the interim, and erecting in the interior of its cafeteria a sign advertising the defendant's name.

Defendant admits the making of the contract and its execution by plaintiff, but alleges by way of affirmative defense that, although ready and willing to pay to the plaintiff the contract sum of $1,000, it is prevented from doing so by the provisions of the recently enacted Alcoholic Beverage Control Law and the Rules of the State Alcoholic Beverage Control Board.

The Alcoholic Beverage Control Law (Laws of 1933, chap. 180; Cons. Laws, chap. 3-b) became effective April 12, 1933. Section 91 of that law provides:

" § 91. Brewers not to be interested in retail places. 1. It shall be unlawful for a brewer to

" (a) be interested directly or indirectly in any premises where beer is sold at retail, or in any business devoted wholly or partially to the sale of beer at retail, by stock ownership, interlocking directors, mortgage or lien on any personal or real property or any other means except as otherwise provided in sections seventy-two and seventy-three of this chapter;

" (b) make any loan to any owner;

" (c) enter into a contract with an owner whereby the owner agrees to confine his sales to beer manufactured by one or more brewers. Such contract shall be void.

" 2. Any lien, mortgage or other interest or estate however, now held by a brewer on or in the personal or real property of an owner, which mortgage, lien, interest or estate was acquired on or before December thirty-first, nineteen hundred and thirty-two shall not be included within the provisions of this section. The burden of establishing the time of the accrual of the interest, comprehended by this subdivision shall be upon the person who claims to be entitled to the protection and exemption afforded hereby."

Under date of July 27, 1933, the State Alcoholic Beverage Control Board, in accordance with authority vested in it by section 17 of the Alcoholic Beverage Control Law, promulgated several rules, apparently for the purpose of clarifying the application of section 91 to certain incidents of the brewing business. Rule No. 2 forbids any brewer to supply to any licensee " any exterior sign — painted, printed or electric — advertising the product of the brewer." The same rule also states that " no brewer or wholesaler shall render service of any kind to a retail licensee which, in the judgment of the State Board, may influence such licensee to purchase the product or merchandise of said brewer, wholesaler or manufacturer."

The question to be decided is simply this: Would the defendant's payment of the contract price violate the above quoted provisions of the Alcoholic Beverage Control Law or of the rules of the State Alcoholic Beverage Control Board?

At the outset it is to be noted that the contract was completely executed, except for payment by defendant, on March 15, 1933. The Alcoholic Beverage Control Law became effective April 12, 1933, and the rules of the State Alcoholic Beverage Control Board are dated July 27, 1933.

It is a well-settled principle that statutes are to be construed only as prospective unless there is a clear legislative expression that they shall be retroactive. (*Orinoco Realty Company* v. *Bandler*, 233 N. Y. 24.)

" The general rule is that statutes are to be construed as prospective only (27 Halsbury's Laws of England, page 159). It takes a clear expression of the legislative purpose to justify a retroactive application." (*Jacobus* v. *Colgate*, 217 N. Y. 235, 240.)

" A retrospective operation of statutes is not to be given except in clear cases unequivocally evidencing the legislative intent to that effect." (*Cameron* v. *United States*, 231 U. S. 710, 720, and cases there cited.)

Statutes dealing merely with matters of remedy or procedure are, of course, exceptions to this rule. (*Preston Co.* v. *Funkhouser*, 261 N. Y. 140.) The question here does not fall under this exception, since it is concerned with the plaintiff's right to enforce the contract and not merely with the method of such enforcement.

I find nothing in the Alcoholic Beverage Control Law which constrains me to hold that the Legislature meant it to operate retrospectively. On the contrary, it is specifically provided in subdivision 2 of section 91 that certain of the interests enumerated in subdivision 1 are not forbidden if acquired on or before December 31, 1932. In several other sections of the statute the effective date of operation of certain provisions is mentioned as June 1, 1933. (§§ 71, 74 and 97.) This is some indication that the Legislature did not intend the law to operate retroactively.

If a statute, which is a direct expression of the legislative intent, is not to be construed retrospectively without clear legislative expression to that effect, *a fortiori* the ruling of a State agency, which is only an indirect expression, is to be similarly construed.

There is another reason for holding that payment by defendant would not be illegal. In executing the contract plaintiff erected a sign in the interior of its cafeteria. The above-quoted rule by its express provisions applies only to exterior signs. Furthermore, the plaintiff's promise to purchase the defendant's product was confined to " near beer " and did not include the " fermented malt beverages " which have since become lawful.

It follows, therefore, that defendant's payment of the contract price will not violate the Alcoholic Beverage Control Law or the rules of the State Alcoholic Beverage Control Board.

Motion granted.